George **L. WILHIDE,** Administrator of the Estate of Ervin L. Harbold, Deceased, Plaintiff

v.

**KEYSTONE INSURANCE COMPANY,** Defendant.

**Civ. A. No. 7147.**

United States District Court M. D. Pennsylvania.

July 10, 1961.

*As Amended July 18, 1961.*

Hurwitz, Klein, Meyers & Benjamin, Harrisburg, Pa., for plaintiff.

Metzger, Wickersham & Knauss, Harrisburg, Pa., for defendant.

FOLLMER, District Judge.

This matter is presently before the Court on motion of defendant to dismiss for the following reasons:

1. Lack of jurisdiction over the subject matter.

2. Lack of jurisdiction over the person of the plaintiff.

3. Failure to state a claim upon which relief can be granted.

4. Failure to join Warehousing and Equipment Corporation, assured, as an indispensible party.

 This being a motion to dismiss based on the insufficiency of the com-

plaint to set forth a cause of action, the facts averred in the complaint must be taken as admitted. 2 Moore's Fed. Practice, 2d Ed., ¶ 12.08. Therefore, for the purpose of this motion, the facts are as follows:

The plaintiff, George L. Wilhide, a citizen of the State of Maryland, is the Administrator d.b.n. of the Estate of Ervin L. Harbold, deceased, by grant of Letters of Administration by the Register of Wills of Adams County, Pennsylvania.

On December 18, 1958, plaintiff's decedent was killed when the automobile he was operating in Adams County, Pennsylvania, was struck by a Fruehauf tractor-trailer owned by and operated on behalf of Warehousing and Equipment Corporation, a Pennsylvania corporation. The serial number of the trailer involved was P117409. For said death plaintiff instituted suit against Warehousing in this Court and after trial, which Warehousing failed and refused to defend, judgment was entered in the total sum of $62,500. No appeal was taken from this judgment.

Plaintiff made demand on Keystone Insurance Company, defendant herein, for payment of the said judgment which he claimed Keystone was legally bound to pay by reason of a liability insurance policy it had issued to Warehousing, insuring against any liability for damages resulting from the use and operation of the said trailer. Defendant has at all times refused to pay on the basis that the trailer was not one of the vehicles listed in and covered by the said policy.

It appears that on or about June 1, 1958, Keystone through its duly authorized agent, one R. T. Knobler, issued its automobile liability policy to Warehousing, wherein a schedule of certain motor vehicles were listed to be covered by said insurance and that it was the intention and agreement of Warehousing and Keystone to provide liability insurance for all vehicles listed in said policy, as well as any additional vehicles which Keystone was thereafter informed were to be included.

It further appears that on August 15, 1958, Warehousing orally notified Knobler's office of its desire to have the Fruehauf trailer with Serial Number P117409 (the one involved in the accident causing Harbold's death) added as an additional vehicle for coverage under the said policy. Warehousing was advised that coverage was being provided and that written endorsement thereof would follow. However, when the written endorsement was received on or about September 10, 1958, Warehousing discovered that the said Fruehauf trailer was not included, but that a Strick trailer with Serial Number 2730 was included in said endorsement despite the fact that the latter trailer was already included in the policy as originally issued, and of which error Warehousing notified Keystone's agent on October 4, 1958. No additional endorsement had been received by Warehousing prior to December 18, 1958, the date of the accident.

The policy contains the following provision:

"Any person * * * who has secured such judgment * * * shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. * * * *"

The questions involved may be briefly stated as follows:

1. Does the Court have jurisdiction of the subject matter and the person of the defendant?

2. Does the action as pleaded state a claim upon which relief can be granted?

3. Does the complaint aver facts warranting reformation of the insurance policy and a recovery thereon in one action?

4. May the action for reformation and to recover damages be maintained by plaintiff without the joinder of Warehousing and Equipment Corporation as a party?

The equities in this case are clear. The complaint avers an agreement on the part of defendant's agent to provide coverage for a particular vehicle which was by mistake of the insurer or its agent omitted from the written endorsement subsequently mailed in accordance with

the previous agreement. Under such circumstances, the insurance company is estopped to deny responsibility for its original undertaking of liability:—

> " * * * the mistake of the agent, * * * was, in law, that of the company, and it does not lie in its mouth to claim that it has escaped liability by reason of the error of its agent. No person or company should profit by his or its own mistake, and if the location of personal property is misdescribed by insurer's agent when, as in this case, the proper information has been given to him, the insured, without asking for reformation of the policy, may, in an action recover for his loss, if he can convince the jury that such is the case * * * ." Litto v. Public Fire Ins. Co., 109 Pa.Super.Ct. 195, 200, 167 A. 603, 604.

In St. Paul Mercury Indemnity Co. of St. Paul v. Long, 3 Cir., 1936, 85 F.2d 848, 850, the Court said: "it is not necessary to reform a policy to correct mere matters of description."

In 1 C.J.S. Actions § 94, it is stated: "A plaintiff may in the same pleading properly join causes of action for the reformation of a written instrument and its enforcement as reformed."

In a suit to reform an insurance policy upon certain furniture and fixtures of the plaintiff so as to disclose the existence of a chattel mortgage in favor of a third person and to thereby avoid a forfeiture of the right to recover for loss of the property by fire, the Court said: "I do not conceive that it is necessary for plaintiff to prosecute two separate causes of action, but that the form of pleading adopted is proper and avoids a multiplicity of suits." Rapides Club v. American Union Ins. Co. of New York, D.C.W.D. La.1929, 33 F.2d 552, 553.

The last two citations are included as basic in the consideration of the problem presented here even though they involve as parties to the action only those privy to the original transaction, namely, the insured and the insurer.

Is the basic theory changed by the intervention of a third party?

7 Appleman Ins. L. & P. § 4259, says: "It is generally held that an injured third person has a right to seek reformation of a policy, notwithstanding the insured's failure to demand reformation."

In line with the opinion of the Third Circuit in St. Paul Mercury Indemnity Co. of St. Paul, supra, Appleman says (7 Appleman Ins. L. & P. § 4260):

> "Reformation of a policy covering a loss has been held not necessary for recovery. And the failure of a state court in a suit between the insured and the insurer to correct an erroneous description of a truck, was no ground for reversal of a judgment for the injured person against the insurer in the federal court, since reformation of the policy was unnecessary to correct mere matters of description. Where the facts necessary to the reformation of an automobile liability policy were pleaded and proved, a judgment for the recovery of money thereunder without a formal decree of reformation was proper."

As to the general proposition of the reformation of a contract, Vol. 5 Williston on Contracts, Revised Edition, § 1547, page 4338, says: "Equity 'will exercise its power to reform instruments, not only as between the original parties, but as to those claiming under them in privity, such as personal representatives, heirs, assigns, grantees, judgment creditors, or purchasers from them with notice of the facts."

As to the right of a third party beneficiary, 2 Williston on Contracts, 3rd Ed., § 381, quotes with approval as follows: " 'The great majority of American courts permits a recovery by the third party beneficiary whether he be a donee beneficiary or creditor beneficiary * * * ." Further, (§ 382) "The courts often apply the following test: ' "If the parties to the contract did intend to confer upon the third person a right against the promisor, or the promisor intended by such agree-

ment to assume a legal obligation to the third person, these would be indicative of the intent of the parties to benefit the third person." ' "

8 Appleman Ins. L. & P. § 4831, says: "An injured third person who has recovered a judgment against the insured generally has been held to be subrogated to the rights of the latter, and he can maintain an action directly against the liability insurer."

■ In the light of the above citations, it would seem to follow that the insured is not an indispensable party in a suit on the policy. It seems to me that there is neither sense nor logic in holding the insured to be an indispensable party in an action for reformation.

Defendant calls to our attention the case of Keystone Insurance Company v. Warehousing & Equipment Corporation, 402 Pa. 318, 165 A.2d 608. This suit involved the same facts as the instant case. It was a declaratory judgment proceeding instituted by the defendant herein seeking certain factual determination on the policy of insurance. The Supreme Court dismissed the action on the ground that the Administrator of the injured third person (plaintiff herein) was a necessary party to the action and had not been joined. Defendant contends the same principle should apply here. I do not think so.

■ Having had notice to come in and defend the action in this Court instituted by the plaintiff herein against the insured and, being so alerted, having refused to appear and defend, the defendant here is now concluded by the judgment in the prior suit so far as it determined the cause of the injury, the amount of damages sustained and the liability of the insured. As stated by the Court in Philadelphia v. Reading Co., 1929, 295 Pa. 183, 189, 145 A. 65, 66:

"* * * It (the defendant) had declined to appear in the litigation after notice to do so, and hence had no control over the course to be pursued in it. If it wished to dictate what should be done at any stage of the proceeding, it should have come in and assumed its primary burden of responsibility for the accident. It could not stand aside from the contest after being invited into it and then complain of the manner in which it was carried on. Its place was on the battle line of the defense if it wished to exercise control over the way the fighting was to be waged."

Practically the same problem as is here involved was before the Court in Marshall, Admx. et al. v. Keystone Mutual Casualty Co. (1945–Dauphin County, Pennsylvania) 54 Pa.Dist. & Co. 391. In that case, in a scholarly and convincing opinion, Judge Woodside considers equitable procedure in Pennsylvania. Approaching the problem then before him and in answer to the contention by defendant that plaintiff should proceed in equity to have the policy reformed before bringing an action at law to recover on the policy, the Court said: (At page 395)

"Again, however, this is not in accordance with the general rule which is set forth in Restatement of the Law of Contracts, § 507, as follows:

" 'Where circumstances justify reformation of a writing, affecting the contractual relations of the parties to the writing, a court may in its discretion without a preliminary decree of reformation give effect to the transaction as if it had been reformed.'

"The practice of reforming written instruments in actions brought on them in law without first having the matter determined in a separate equity proceeding has been followed in Pennsylvania so consistently, and over such a long period of time that there can no longer be any doubt as to the law of this Commonwealth concerning it."

Judge Woodside then quotes from the policy the third party provision which is quoted hereinabove. He then poses the problems before him as follows: (At page 401)

"As we have seen, two points are settled in this Commonwealth: (1) That an insurance policy may be reformed in an action in assumpsit brought to recover under it as reformed; and (2) that an action may be brought on an insurance policy by the beneficiary without the joinder of the insured. So far as we know these two rules have never been applied in the same case in Pennsylvania, but we see no reason why they cannot be.

"There are a number of cases in other jurisdictions holding that an injured third person can sue the insurer for reformation of a policy without joinder of the insured. In the case of Binswanger, admr., etc. v. The Employers' Liability Assurance Corp., Ltd., 224 Mo.App. 1025, 28 S.W.2[d], 448, the court permitted reformation at the suit of the injured party alone, and disposed of the defendant's contention in that case, similar to the present defendant's contention, as follows ( [224 Mo.App. at] p. 1036 [28 S.W.2d at page 454]):

" 'In this connection it is argued that "the rule uniformly applied in determining who are entitled to reformation, limits the remedy to original parties or those in privity with them." * * *.'

" 'That there was such a privity between the insured and the deceased, to whom the insured owed a duty not to negligently injure, there can be no question (Citing cases, including Rose [& Son] v. Zurich, 296 Pa. 206 [145 A. 813]) * * *

" 'It is substantially admitted by the defendant that if there is any privity between plaintiff and the insured that plaintiff is entitled to bring this suit for reformation. From the authorities we have cited it is quite apparent that such privity exists.' "

I am in complete agreement with Judge Woodside that the insured is not a necessary party in an action brought on an insurance policy by a beneficiary and I can see no reason why a policy may not be reformed in an action in assumpsit brought to recover under it as reformed. I believe I am justified in concluding that the principles of law enunciated in the Marshall case would be affirmed by the Pennsylvania appellate courts.

Defendant thinks the Marshall case is poor law. It notes that there are no appellate court cases sustaining the holding of that case. It only covers one side of the coin, however. It fails to cite in its brief any other case in Pennsylvania, appellate or lower court, which holds contrary to the Marshall case, or which has ever criticized that holding.

The fact that in Pennsylvania there are no separate chancery courts, that one of the fundamental objectives of the Federal Rules of Civil Procedure is to avoid multiplicity of actions, that in actions of this sort the courts have held that privity exists between the third party beneficiary and the insured, all convince me that the reformation of the policy should be considered jointly with the action on the policy and that the insured is not a necessary party.

As stated by Judge Woodside in the Marshall case, (54 Pa.Dist. & Co. 391, 404):

"The insurance carrier elected to ignore the trial against its alleged insured and it cannot now complain of the manner in which that contest was carried on."

Defendant's motion to dismiss will be denied.